AUSA: STEPHANIE SIMON

| UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK | **23 MAG 7139** |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BRANDON SANTANOO,<br><br>Defendant. | **COMPLAINT**<br><br>Violations of 18 U.S.C. §§ 1344, 1349, 1028A<br><br>COUNTY OF OFFENSE: NEW YORK |

SOUTHERN DISTRICT OF NEW YORK, ss.:

MATIN MODARRESSI, being duly sworn, deposes and says that he is an Assistant Inspector General with the New York City Department of Investigation ("DOI"), and charges as follows:

## COUNT ONE
### (Conspiracy to Commit Bank Fraud)

1.      From at least in or about June 2021 through at least in or about May 2023, in the Southern District of New York and elsewhere, BRANDON SANTANOO, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit bank fraud, in violation of Title 18, United States Code, Section 1344.

2.      It was a part and an object of the conspiracy that BRANDON SANTANOO, the defendant, and others known and unknown, knowingly would and did knowingly execute, and attempt to execute, a scheme and artifice to defraud financial institutions, as that term is defined in Title 18, United States Code, Section 20, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institutions, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344, to wit, SANTANOO agreed with others to obtain checks made payable to the New York City Law Department (the "Law Department") and to deposit forged and

altered versions of those checks into bank accounts at financial institutions, and then to withdraw funds from those bank accounts.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
**(Bank Fraud)**

3. From at least in or about June 2021 through at least in or about May 2023, in the Southern District of New York and elsewhere, BRANDON SANTANOO, the defendant, knowingly executed, and attempted to execute, a scheme and artifice to defraud a financial institution, as that term is defined in Title 18, United States Code, Section 20, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such a financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, SANTANOO obtained checks made payable to the Law Department, and then aided and abetted the depositing of forged and altered versions of those checks into bank accounts at financial institutions and the subsequent withdrawal of funds from those bank accounts.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNT THREE
**(Aggravated Identity Theft)**

4. From at least in or about June 2021 through at least in or about May 2023, in the Southern District of New York and elsewhere, BRANDON SANTANOO, the defendant, knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, SANTANOO, without lawful authority, knowingly possessed and transferred checks made payable to the Law Department with the names and bank account numbers of other persons and entities, and aided and abetted the use of the same, during and in relation to

the bank fraud conspiracy charged in Count One and the bank fraud charged in Count Two.

(Title 18, United States Code, Sections 1028A(a)(1),
1028A(b), and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

5.  I am an Assistant Inspector General with DOI. I have been personally involved in the investigation of this matter, and I base this affidavit on that experience, my conversations with other law enforcement officials, and my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Overview of the Scheme

6.  In or about August 2022, DOI received a report from the Law Department that there were numerous workers' compensation claim reimbursement checks that the Law Department had been expecting, but had no record of ever receiving. When representatives of the Law Department reached out to the various law firms that had issued the checks, the law firms reported that the checks had in fact been sent, and in many instances those checks had been deposited.

7.  As part of this investigation, DOI has identified approximately 40 checks, totaling approximately $600,000, that were reportedly sent by mail to the Workers' Compensation Division of the Law Department between in or about May 2021 and March 2023, but that the Workers' Compensation Division has no record of having received.  Those checks were ultimately forged or altered, and then deposited in bank accounts belonging to individuals with no association with the Law Department.

**Background**

8. Based on my participation in this investigation, my conversations with various Law Department employees, and my review of open source documents, I have learned, among other things, the following:

    a. The Law Department is the legal representative of the City of New York (the "City"). Among other things, the Law Department "represents the City, the Mayor, other elected officials, and the City's many agencies in all affirmative and defensive civil litigation[.]"[1]

    b. The Law Department is composed of multiple divisions, including, as relevant here, the Workers' Compensation Division. The Workers' Compensation Division is responsible for administering claims of City employees who are covered under New York's workers' compensation statute and are injured on the job.[2]

    c. The City as an employer "is a self-insurer of its workers' compensation obligations pertaining to all covered City employees."[3]  When a covered City employee submits a valid workers' compensation claim for an injury on the job, the City is responsible for paying out the claim. Sometimes, an injured employee who has received a workers' compensation payment from the City will also sue a third party the employee claims is responsible for his/her workplace injury. If the employee recovers on that lawsuit, by settlement or by judgment, the City is entitled to a portion of the payment the employee receives as reimbursement for the workers' compensation claim the City already paid. In such a situation, the Workers' Compensation Division will send a letter to the law firm representing the third-party payor, directing the firm to send a check by mail

---

[1] Law Department, "About the Law Department," https://www.nyc.gov/site/law/about/about-the-law-department.page (last visited Nov. 7, 2023).

[2] Law Department, "Workers' Compensation," https://www.nyc.gov/site/law/divisions/workers-compensation.page (last visited Nov. 7, 2023).

[3] Id.

to the Law Department, addressed to the Workers' Compensation Division, at the Workers' Compensation Division office in Brooklyn (the "Office").

9. Based on my conversations with certain Law Department employees and my review of reports and records, I am aware that BRANDON SANTANOO, the defendant, has been employed by the Law Department as a clerical associate at the Office since on or about January 9, 2017, and that by virtue of his position, Santanoo at all relevant times has had access to mail that is sent to the Office.[4]

### The Investigation

10. In connection with this investigation, DOI received images of several checks that had been mailed to the Workers' Compensation Division by particular law firms, but were not received by the Workers' Compensation Division. Based on my review of those check images, as well as images of checks found on certain devices and accounts (*see infra* ¶¶ 13, 15), my conversations with representatives of law firms that had reported mailing checks to the Workers' Compensation Division that were never received, and my review of bank records associated with various accounts, I am aware that several of those checks (the "Stolen Checks") were in fact mailed to the Office and ultimately deposited into bank accounts not belonging to the Law Department. For example,

   a. A law firm ("Law Firm-1") located in Melville, New York, sent a check ("Check-1") by mail to the Office, bearing check number 1307, dated May 20, 2022, drawn on an account at JPMorgan Chase Bank ("Chase"), in the amount of $15,663.18, made payable to the Law Department. Records obtained from TD Ameritrade show that on or about June 15, 2022, a

---

[4] Based on my conversations with Law Department representatives, my review of reports and records, and my participation in this case, I am aware that the individuals identified as CC-1 and CC-2, *infra*, have never been employed at the Law Department and accordingly would not have had access to the mail room in the Office.

check drawn on Law Firm-1's account at Chase, with the same check number, date, and amount of Check-1, but with the payee altered to be the name of a particular person ("CC-1") ("Check-1a"), was deposited into a TD Ameritrade account ending in 2579 (the "2579 Account"). Records obtained from TD Ameritrade show that the 2579 Account was opened in the name of CC-1, with an address in Queens Village, New York (the "CC-1 Address"), a particular email address (the "CC-1 Email Address"), and a phone number ending in 0086 (the "CC-1 Phone Number").[5] Those records further show that the $15,663.18 was subsequently withdrawn from the 2579 Account.

        b.     A law firm ("Law Firm-2") located in New York, New York, sent a check ("Check-2") by mail to the Office,[6] bearing check number 1425, dated June 9, 2022, drawn on an account at Esquire Bank, in the amount of $37,055.34, made payable to the Law Department. Records obtained from Santander Bank show that on or about June 24, 2022, Check-2 was deposited into a Santander Bank account ending in 9222 (the "9222 Account"), created by a person with no affiliation to the Law Department in the name of "The NYC LAW DEPT WORKERS COMP DIVISI LLC." Those records further show that the $37,055.34 was subsequently withdrawn from the 9222 Account.

        c.     A law firm ("Law Firm-3") located in Buffalo, New York, sent a check ("Check-3") by mail to the Office, bearing check number 24540, dated June 16, 2022, drawn on an account at M&T Bank ("M&T"), in the amount of $8,171.36, made payable to the Law Department. Records obtained from TD Bank show that on or about July 5, 2022, a check drawn

---

[5] Based on my review of records obtained from Verizon Wireless, I am aware that the CC-1 Phone Number is subscribed to a person other than CC-1 at the CC-1 Address. For the reasons explained herein, I believe it is being used by CC-1, including because the cellphone lawfully seized from CC-1's person on or about August 18, 2023, pursuant to a search and seizure warrant, *see infra* ¶ 14, was assigned the CC-1 Phone Number.

[6] Based on my conversations with a representative of Law Firm-2, I am aware that Check-2 was mailed to the Office from an address in Westchester County.

on Law Firm-3's account at M&T, with the same check number, date, and amount of Check-3, but with the payee altered to be the name of a particular person ("CC-2") ("Check-3a"), was deposited into a TD Bank account ending in 4937 (the "4937 Account"). Those records further show that the 4937 Account was opened in the name of CC-2, at an address in Queens Village, New York (the "CC-2 Address") close to the CC-1 Address, and that the $8,171.36 was subsequently withdrawn from the 4937 Account.

    d. A law firm ("Law Firm-4") located in Flushing, New York, sent a check ("Check-4") by mail to the Office, bearing check number 427772, dated June 14, 2022, drawn on an account at Chase, in the amount of $6,918.14, made payable to the Law Department. Records obtained from TD Bank show that on or about July 7, 2022, a check drawn on Law Firm-4's account at Chase, with the same check number, date, and amount of Check-4, but with the payee altered to be CC-2 ("Check-4a"), was deposited into the 4937 Account.

    e. A law firm ("Law Firm-5") located in Jamaica, New York, sent a check ("Check-5") by mail to the Office, bearing check number 0836, dated November 21, 2022, drawn on an account at Signature Bank, in the amount of $49,091.67, made payable to the Law Department. Records obtained from Bank of America show that on or about December 12, 2022, a check drawn on Law Firm-5's account at Signature Bank, with the same check number, and date, the dollar amount altered to be $49,045.50, but with the payee altered to be the name of another person was deposited into a Bank of America account ending in 7431 (the "7431 Account").[7]

11. Based on my review of certain bank records and my participation in this investigation, I am further aware that in or about July 2022, shortly after Check-1a was deposited,

---

[7] Based on my review of open source records, my training and experience, and my participation in this case, I am aware that all of the financial institutions referred to in Paragraphs 10(a)-(e), *supra*, are banks, the deposits of which are insured by the Federal Deposit Insurance Corporation.

money was transferred from a bank account associated with CC-1 to an account associated with BRANDON SANTANOO, the defendant. Specifically,

      a.    Records obtained from Early Warning Systems, which owns and operates the mobile payment application Zelle, show a Zelle transfer of $1,500 from CC-1 to SANTANOO at a phone number ending in 7210 (the "Santanoo Phone Number") on or about July 1, 2022.[8]

      b.    Records obtained from Chase show that a Chase account ending in 3829 (the "3829 Account") was opened in the name of CC-1, with the CC-1 Address, the CC-1 Email Address, and the CC-1 Phone Number as the contact information on the account. Those records show that on or about June 22, 2022, $10,000 was transferred from the 2579 Account to the 3829 Account, and that on or about June 27, 2022, $6,000 was transferred from the 2579 Account to the 3829 Account. Those records also show that on or about July 1, 2022, $1,500 was transferred via Zelle from the 3829 Account to an account associated with the Santanoo Phone Number.

12.    In connection with this investigation, on or about March 8, 2023, the Hon. Gabriel W. Gorenstein, U.S. Magistrate Judge for the Southern District of New York, issued a search warrant, 23 Mag. 1882 (the "Apple Search Warrant"), for two Apple iCloud accounts, including an account with identifiers associated with CC-1 (the "CC-1 iCloud Account").

13.    Based on my review of returns from the Apple Search Warrant, I am aware that contained in the CC-1 iCloud Account were files from a software application called CheckBuilderPro. Based on my training and experience, my participation in this investigation, and

---

[8] Based on my review of records obtained from Verizon Wireless, I am aware that the Santanoo Phone Number is subscribed to a person with the last name "Santano" other than BRANDON SANTANOO at an address in Queens Village, New York very close to the CC-1 Address and the CC-2 Address (the "Santanoo Address"). I believe the Santanoo Phone Number being used by SANTANOO, including because it is associated with a Zelle account in SANTANOO's name, and the cellphone lawfully seized from SANTANOO's person on or about August 18, 2023, pursuant to a search and seizure warrant, *see infra* ¶ 14, was assigned the Santanoo Phone Number.

my review of open source materials, I am aware that CheckBuilderPro permits users to generate electronic checks, which can then be printed in hard copy. I am further aware that CheckBuilderPro retains a "Check Register," which is a log of checks generated using the application, and that it is possible to reprint checks from the Check Register, which then generates an image of checks maintained in the Check Register. In the Check Register contained on the CC-1 iCloud Account, there were numerous images of checks that matched the information of certain of the Stolen Checks (including law firm name, bank, check number, and/or amount), but were made out to payees other than the Law Department. Among the checks listed in the Check Register contained on the CC-1 iCloud Account, for which I was able to review reprinted check images, were Check-1a, Check-3a, Check-4a, and Check 5-a, which suggests that those checks were generated by CC-1 using the CheckBuilderPro application.

14.     In connection with this investigation, on or about August 17, 2023, the Hon. Sanket Bulsara, U.S. Magistrate Judge for the Eastern District of New York, issued a search warrant, 23 Mag. 745 (the "Cellphone Warrant"), for all electronic devices on the person of BRANDON SANTANOO, the defendant, and all electronic devices on the person of CC-1, among other devices. On or about August 18, 2023, law enforcement officers executed the Cellphone Warrant. A cellphone (the "Santanoo Cellphone"), assigned the Santanoo Phone Number as its call number, was seized from the person of SANTANOO, who was found at the Santanoo Address. A cellphone (the "CC-1 Cellphone"), assigned the CC-1 Phone Number as its call number, was seized from the person of CC-1.

15. Based on my review of the Santanoo Cellphone, I am aware that BRANDON SANTANOO, the defendant, was in contact with CC-1 and discussed matters concerning checks being stolen from the Law Department. For example,

a. On or about September 8, 2022, the CC-1 Phone Number and the Santanoo Phone Number engaged in the following exchange using iMessage:

| | |
|---|---|
| CC-1 Phone Number: | Yo peep tele |
| Santanoo Phone Number: | Yoyo don't got the tele no more |
| Santanoo Phone Number: | My socials might be on watch |
| CC-1 Phone Number: | Oh shit |
| CC-1 Phone Number: | But can't they not check telegram? |
| Santanoo Phone Number: | Facts I deleted the convo and shit |
| Santanoo Phone Number: | Idek I don't wanna risk nothing or anyone |

Based on my training and experience, and my participation in this investigation, I believe that, in sum and substance, during this exchange, CC-1 directed SANTANOO to look at ("peep") the Telegram application ("tele"), and that SANTANOO responded that he did not have Telegram any longer ("don't got the tele no more") because his social media may be under surveillance ("My socials might be on watch"). When CC-1 inquired whether Telegram could be monitored, SANTANOO further explained, in sum and substance, that he had deleted the incriminating conversation ("I deleted the convo") because he did not want to "risk nothing or anyone." I am further aware that, prior to this iMessage conversation, DOI had informed the Law Department regarding DOI's investigation into the Stolen Check scheme, and that on or about September 7, 2022 (the day before this iMessage conversation), the Law Department had received an email from a law firm that had sent checks to the Law Department that were allegedly stolen with the subject line "CROOK IN YOUR OFFICE: ARE YOU CONVINCED NOW?," in which the sender of the email posited, in sum and substance, that an employee of the Law Department was stealing checks from the Office. Based on my training and experience, and my participation in this investigation, I believe that—in light of the foregoing—SANTANOO may have learned about the DOI

10

investigation into checks being stolen from the Law Department, was concerned that he was under surveillance, and as a result wanted to limit his correspondence with CC-1 regarding such checks.

  b.  On or about October 4, 2022, the CC-1 Phone Number and the Santanoo Phone Number engaged in the following exchange using iMessage:

| | |
|---|---|
| CC-1 Phone Number: | Anything? |
| Santanoo Phone Number: | Nothing yesterday, off work today |
| CC-1 Phone Number: | Bet lmk wtw |

Based on my training and experience, and my participation in this investigation, I believe that, in sum and substance, during this exchange, CC-1 asked SANTANOO whether he had a check ("Anything?") to share with CC-1, and SANTANOO responded that he had gotten "[n]othing yesterday," and he would not have anything to share "today" because he was "off work" and therefore would not have access to checks. CC-1 responded, in sum and substance, let me know ("lmk") what's the word ("wtw")—in other words, let me know what is going on.

  c.  On or about December 5, 2022, a Telegram account associated with the owner of the Santanoo Cellphone (the "Santanoo Telegram Account") sent to a Telegram account associated with CC-1 (the "CC-1 Telegram Account")[9] several images of the front and back of Check-5 using Telegram. The CC-1 Telegram Account and the Santanoo Telegram Account then engaged in the following exchange using Telegram:

| | |
|---|---|
| CC-1 Telegram Account: | See this look good but can u take that home or u gotta process that |
| CC-1 Telegram Account: | Cause if u can take it home ima find an account nd get it right |
| CC-1 Telegram Account: | ? |
| Santanoo Telegram Account: | Yea I'm bring this one with me today |
| CC-1 Telegram Account: | Bet ima get to it |

---

[9] Based on my review of the Santanoo Cellphone, I am aware that the CC-1 Phone Number is saved under the same display name as the CC-1 Telegram Account. Further, based on my review of the CC-1 Cellphone, I am aware that the CC-1 Telegram Account is displayed as the account associated with the owner of the device.

11

Based on my training and experience, and my participation in this investigation, I believe that, in sum and substance, during this exchange, SANATANOO sent to CC-1 images of a check he had located in the mail room at the Office. CC-1 asked SANTANOO to "take it home" from the Office so that CC-1 could "find an account" to deposit it into, which SANTANOO agreed to do.

d. On or about February 21, 2023, the CC-1 Telegram Account and the Santanoo Telegram Account engaged in the following exchange using Telegram:

| | |
|---|---|
| CC-1 Telegram Account: | U know any companies that for sure might slap that u be gettin at ur job? |
| CC-1 Telegram Account: | Cause the next work we hit tryna cash out for sure |
| Santanoo Telegram Account: | That I'm not sure about, I usually get law checks or wc checks |
| Santanoo Telegram Account: | Got 131 pieces mail today hopefully I find 1-3 |
| CC-1 Telegram Account: | Bet say that and which ones u think got less security |
| CC-1 Telegram Account: | So far I looked at all the slips that hit and it's the ones that say the word law in the name |
| Santanoo Telegram Account: | Hmm so that's from a law firm itself |
| Santanoo Telegram Account: | Bet I'm look out for those mostly |
| Santanoo Telegram Account: | Sadly today nothing fuck |
| Santanoo Telegram Account: |  |
| Santanoo Telegram Account: | All this and not one slip |
| Santanoo Telegram Account: | Just finished opening all the mail for today |
| CC-1 Telegram Account: | Bet u Gucci appreciate u always tho |

12

Based on my training and experience, and my participation in this investigation, I believe that, in sum and substance, during this exchange, CC-1 asked SANTANOO whether SANTANOO had access to forms of payment (possibly checks) at the Law Department ("at ur job") that would be lucrative ("for sure might slap") because CC-1 was "tryna cash out." SANTANOO responded, in sum and substance, that he usually was able to get "law checks" or "wc checks" (workers' compensation). SANTANOO then explained that he would hopefully "find 1-3" checks out of the "131 pieces mail" he had received that day. CC-1 then noted that the checks "that say the word law in the name" have "less security," to which SANTANOO responded "that's from a law firm itself." SANTANOO then sent an image of a large stack of papers—which he described as "the mail for today"—and said "[s]adly today nothing," implying that he was not able to find any checks to steal from the Law Department that day.

16. Based on my review of the Santanoo Cellphone, I am further aware that photos of several of the Stolen Checks were saved to the device, including photos of Check-2, Check-3, a partial image of Check-4, and Check-5.

WHEREFORE, I respectfully request that a summons be issued for BRANDON SANTANOO, the defendant, to appear on November 13, 2023, at 10:30 a.m., and that he be imprisoned or bailed, as the case may be.

/s authorized electronic signature
_____
MATIN MODARRESSI
Assistant Inspector General
New York City Department of Investigation

Sworn to me through the transmission of
this Complaint by reliable electronic
means (telephone), this __8th__ day of November, 2023.

_____
THE HONORABLE SARAH NETBURN
United States Magistrate Judge
Southern District of New York

14